May it please the Court, I'm Mike Fowler, and I'm here representing Renee Kiel Pratt on this appeal. As the Court knows since we filed our brief in May of this year, two cases have been decided by different panels of this Court concerning the singular issue in this case. The issue is whether the Court may apply a presumption of prejudice in a case such as this rather than engage in a harmless error analysis which requires proof of actual prejudice. Each of the three cases that we're talking about, the Bowen case otherwise referred to as Danziger Bridge, the McCrae case which is referred to as the Glover case, and this one concerned the extensive, the admitted extensive and pernicious anonymous blogging by a highly placed Assistant U.S. Attorney named Sal Perricone. He did so over a period of three years in which he directly commented on the three cases in issue prior to and during their trials. There, as your Honors know, there was an investigation that came out of the Danziger Bridge case. The Office of Professional Responsibility of the Department of Justice issued a report in which it, quote, found that Mr. Perricone intentionally committed professional misconduct including in connection with the prosecution of Renee Gill Pratt and the Jefferson family as well, which is at the moment in this case. In McCrae, the panel affirmed Judge Afric's denial of a new trial because proof of actual prejudice allegedly had not been demonstrated. Judge Higginbottom authoring that opinion did so without any reference to Brecht v. Abramson, particularly footnote nine in Brecht. And in that footnote, as we know, stated that in paraphrasing, in an, quote, unquote, an unusual case of deliberate and especially egregious error, one that is combined with a pattern of prosecutorial misconduct, such case might so, in such a case, may so infect the integrity of the proceeding as to warrant reversal, quote, even if it did not substantially influence the jury's verdict. In Danziger Bridge, which we issued shortly after the McCrae case, the different panel of the Fifth Circuit affirmed Judge Englehardt's grant of a new trial motion principally, that's their language, on an application of footnote nine's presumed prejudice doctrine, in addition to which they found there was actual prejudice, as did Judge Englehardt in that case. Very simply, the Fifth Circuit, in its opinion, stated, in a sui generis case such as this, specific prejudice is not necessary, not a necessary prerequisite to grant of a new trial. The various appellate courts around the country, three in particular, that have discussed footnote nine, have each acknowledged that it creates a presumption of prejudice in an appropriate, as what they refer to as a hybrid case. As your honors know, when they say a hybrid case, it's one that is neither consisting of trial error or, on the other hand, contains a structural error. That is what is the definition, a brief definition of a hybrid case, which we suggest that is our case, as Judge Englehardt found, of course, in Danziger. The three cases, there were three cases that I know that relate, that dealt with the Brecht footnote, Hardnett in the Ninth Circuit in 1994, Harbin in the Seventh Circuit in Higginbottom, who, let me quote, held that he stated, Brecht, quote, held that if structural error or hybrid error occurs, harmless error review is inappropriate. That's not my language, that's Judge Higginbottom's language, which I don't know how that, well, I guess in some, I don't know how you The issue here is does this case warrant a presumption of prejudice as it was in Danziger-Brecht? As we, I think we all understand, the underlying factual impropriety, course of conduct is the same in all three cases. I think it's important that the Court look at what the District Court's finding was at the June 25th, 2014 hearing on my motion for a new trial. The Court, at that hearing, found, again, these are quotes, this is not an ordinary case. It implicates egregious misconduct by members of the U.S. Attorney's Office. It was pervasive, insidious, and most important, or I should say quite important, quote, routinely took on racial overtones with respect to Rene Gilbride's case. It was done, the Court found, with intent to prejudice Rene Gilbride through her association with the Jeffersons who Perricone continually vilified in the blogs prior to, between the two trials, and during a trial, Rene was tried in February of 11, I believe. There was a mistrial, a hung jury, and then a second trial in the summer in which he was convicted. The judge, of course, also found that the actions of Sal Perricone constituted a patent prosecutorial misconduct which went on from 2008, in December, I think, as far as it concerned the Rene Gilbride slash Jefferson cases. He was doing it in December of 08, right through the trial of Rene in August, July and August of 2011. At that hearing, Judge Lamel acknowledged the applicability of Footnote 9, just as was done in Danzig-Gabridge. Then, inexplicably, he sought to solve the problem by submitting two questions to two jurors who happened to mention in the course of, I think, in their questionnaire that they had been, they were readers of NOLA.com. I didn't mention the posting, Sal Perricone's posting were on NOLA.com. He used several names, but they were all postings on the site of NOLA.com. He simply asked them two questions, totally, they're in the record, simply whether they were affected or read those posts, did it affect them? No. And he then went on to do, not a Footnote 9, a Brecht analysis. Based on their did a harmless error review, wholly ignoring the applicability of Brecht. Can I ask a question? Sure. When the judge decided that what he was going to do was send out this questionnaire, I guess that's how he did it, to these two jurors who indicated that they had used NOLA.com, did anybody object and say, you need to do the whole veneer, the whole jury panel, or did they ask for broader? What we asked for was far more than that. What we asked for initially, and it's in our motion for a new trial, that there should be an in-depth, I'm not saying to conduct the same investigation Judge Engelhardt did, but against the backdrop of what we knew Judge O'Neill Hart did. Judge Engelhardt had stopped short of concluding his investigation, and we felt that it was important to understand, which had never been determined, the extent of the blogging, the full extent of Perricone's blogging, but more than that, the blogging that may have gone on by other members of the U.S. Attorney's Office, and there was a great deal of information, or I should say, a fair amount of information, in the Engelhardt investigation, reflecting that it was known in the U.S. Attorney's Office that Perricone was doing it. And what I'm saying, we wanted, in answer to your question, Judge King, is that we wanted that investigation, that to be done so we could have a record for it in this case. We also were, not only did we not know the extent of it, well, we really were looking to find out the extent of blogging and just the complicity, and I'm using that word, of the U.S. Attorney's Office in not just fostering it. I understand. We asked for that. You asked that the court hold the entire jury. No. We asked initially for the court to run the investigation. With respect to, if you assume that there is a prejudice requirement, if you assume that, the question is, did you ask the court to find out whether anybody else on that jury had looked at NOLA.com? Yes, we asked. There were six jurors, among which were the two, who had identified NOLA.com. Six who said they got the internet as a source of their information. Two. Of two of whom. Two of whom used NOLA.com. Right, had identified NOLA.com specifically, and those are the only two we questioned. And of course, Your Honor, we. You said you should question the other four. They never did. I know they never did. The question is, did you ask them? Yes. We did ask, and just very candidly, Your Honor, you know, we're put in, I don't mean in a request for the broader investigation, or made clear orally he wasn't going to go that route. We were then left with this issue of questioning jurors. Questioning jurors was beside the point. This is an issue, you know, unless someone came along and said, oh yeah, I read it, it affected me, et cetera. The issue here is presumpt, the appropriateness of the presumption. I understand that's the pew you want to be in, in this church, but I wanted to find out about the other one, which is. There were six in total, only two of which identified. Your brief does not say that you should have asked the other four. Your brief just says you shouldn't have been in the prejudice pew, you should have been in the presumed prejudice pew. That's accurate. I do believe that we did allude to the six, Your Honor, though. Well, you mentioned that there were six, but. But he wouldn't, he didn't, he wouldn't do the six. He just did the four. He chose to do it. We were supposed to, in fact, have a status conference concerning this. He cancelled it, and the next thing we knew, he had made the decision to question the two, sent out these, what I think were innocuous, two questions to them, and then wrote his order and reasons against the backdrop of having questioned those two, and not dealing with Brecht at all, which he had focused on, when you, please look at the June 25th transcript, I have it, I know it's part of the record, in which he's focusing on, and then he puts it aside, and he simply does what Judge Higginbottom said you can't do, a harmless error review. And in the case of this sort, we are in a, this is a unique situation. There are people around, let me just say, who view that footnote in Brecht as a habeas remedy, with all of the ways in which you develop evidence in a habeas case. It's far broader. Well, apparently so, or at least so it would appear. Right, but I know of nothing that's, the courts who have dealt with it, Seventh, Ninth, and the Fifth Circuit, through Judge Higginbottom, and of course, Judge, this circuit, in the Danziger Bridge case, did not view it solely as a habeas case. It came out of a habeas case, of course, but if you also, if you look at the references they make, the Greer opinion, Judge Stevens' concurrence in the Greer case, and others, it's far, the courts, I think, I won't say universally, but for the most part, have understood, it created, it, the Brecht footnote created a new category of, the unique case of the kind of prosecutorial misconduct that is apparent in this case, and which consists of a pattern, which in that case, where you can't quantify this damage, in no way can you quantify it, what it does is it pollutes, as Judge, excuse me, Judge Jones in the Danzig case wrote, it pollutes the whole atmosphere, and you have no way of quantifying, of being able to assess its impact, and the court, when you have that, there's no reason why the court should be protecting the misconduct, of the, the outrageous misconduct of the U.S. Attorney's Office. What is there, why is that these assistant U.S. attorneys are supposed to be protected? Part of the whole reason the regulations governing the limitations as to which they can make statements to the press, etc., is for the protection of defendants. In this instance, they did just the opposite, and I say they, obviously it wasn't everyone, but the conduct of Perricone can be ascribed to his office, and he went out to inflame the public. Looks like my time is up. Thank you so much, Judge. Mr. Boitman. Thank you. Good afternoon, Your Honors. May it please the Court. Kevin Boitman for the United States, and along with me is Diane Copes. Your Honor, Mr. Fowler talked a lot about the conduct of former U.S.A. Perricone and its egregiousness. No one disputes that. No one says it was anything but terrible, no one says it was anything but wrong, and the government has agreed that, and the Department has found it is unprofessional conduct. But the issue here is not just the conduct, because this Court's case law is clear when it comes to Rule 33, that misconduct is not enough, in and of itself, to grant a new trial on the basis of newly discovered evidence, which is what this motion was brought under. The newly discovered evidence here was not the comments themselves. Those comments had been posted already. They were in existence at the time of the trial. It's very similar in the McCrae case. They were user-generated comments on NOLA.com, among hundreds of others, that followed the articles and were not part of it. The question was whether the newly discovered evidence of the authorship by Perricone, whether that was enough to grant a new trial. And the test that this Court has always said, the fifth part of the test, is would the new evidence, if exposed to the jury, probably produce an acquittal? That's the showing of prejudice that Rule 33 requires. And it's the focus of the case law. The question is not just whether there was misconduct. The question is whether there are adverse effects on a defendant's substantial rights. The focus, as the Supreme Court has said, is the fairness of the proceedings, not the culpability of a prosecutor. And certainly this Court in 2013 stated in no uncertain terms in U.S. v. Poole that a new trial is not a mechanism for punishing contemptuous behavior of prosecutors. And as this Court again stated recently in the McCrae decision, the fact that condemnable conduct occurred is not enough. That's ultimately, though, what Ms. Pratt and Mr. Fowler are arguing here for, that the conduct itself deserves a presumption of prejudice, but that's inconsistent with this Court's case law in the past. Ms. Pratt needs to show prejudice in order to get a new trial in this. And she's required to show a substantial possibility of prejudice. And admittedly, that is a difficult standard to meet, and it's supposed to be a difficult standard to meet. But Ms. Pratt and Mr. Fowler are arguing that a new trial is not a mechanism for punishing contemptuous behavior of prosecutors. That's ultimately, though, what Ms. Pratt and Mr. Fowler are arguing here for, that the conduct itself deserves a presumption of prejudice, but that's  I first point out to say that that's a big difference from the question, must a court apply a presumption of prejudice? In either case, we disagree and say that presumption of prejudice is not warranted in this situation or in any situation in Rule 33 case law based on new evidence. And there are several reasons why the presumption of prejudice should not apply. And it starts with the findings that Judge LaMalle made in this matter at the time of the new trial motion. Mr. Fowler pointed out that Judge LaMalle found this was an unusual case. Yes, he did, but he made several other findings in that 20-something page transcript in his ruling. He found that at that time, there was nothing to suggest the jury or any members of the jury had lied about media exposure. That's on page 16 of that transcript. Also, he found there was nothing to show that the at that time, he was not inclined to find that the misconduct by Sal Perricone so infected the trial that reversal was required without some showing of prejudice. And that's in page 20. He did consider footnote 9 of Brecht v. Abramson, and he also considered this court's statements in U.S. v. Poole that a new trial is not a mechanism for punishing prosecutors, and then went on to take the extraordinary step, which was objected to by the government, of asking two other jurors, the two jurors who had mentioned originally that they had received news from NOLA.com. He took the extraordinary step of putting out questionnaires to them about whether they saw the comments, and those are in the record sealed at page 10817-20 of the record. Both jurors said no, they hadn't seen the comment. And in fact, one of the jurors specifically wrote down that he based his decision on the enormous amount of evidence. He followed the court's instruction, that's at page 100820. When he saw that, when that came back to Judge LaMelle, Judge LaMelle then made an additional finding at page 3816-17 of the record, saying he found no evidence to suggest the jurors were exposed to Perricone's comments. And at 3829, in a subsequent order, made the statement there was no basis to presume prejudice or believe that Perricone's authorship was ever known, was even known to the jury. So for those reasons alone, this is a case where presumption of prejudice should not apply. But in addition to those cases in that situation, there's also this court's previous findings when the case came on appeal, Your Honor, at 728F3-463, specifically page 471-72 of the record. This court at that time found that Judge LaMelle handled voir dire very well, that he had committed, that he had had an extensive and probing voir dire. It consisted of lengthy questionnaires and individual questions that ferreted out any potential biases on the jury. He routinely admonished the jury about their duties and their role. And this court found there was nothing to suggest that any of the jurors, even the ones that had had any preconceptions beforehand, there was nothing to suggest that they were unable to perform their duties. And as this court knows, the jury is presumed to follow the duties. And at page 16 of the transcript, Judge LaMelle found again that there was nothing to believe, nothing to indicate the jury found otherwise, that the jury did anything but follow their instructions. One other reason in this case that a presumption of prejudice should not apply in this new trial proceeding is the nature of the comments. And I don't mean the tone of the comments. No one questions that they're inappropriate, that they had racial overtones, as Judge LaMelle said, and that they were improper. But the anonymity means something. It doesn't diminish the conduct. And I want to make that clear. I'm not saying that the fact that Sal Perricone did not put his name on there minimizes his misconduct. But it does focus on, did the conduct affect the verdict? Does it undermine confidence in the verdict? And this is something that it wouldn't have happened. Even if the jurors had disregarded their instructions, and they had read the user-generated comments that were under the articles of NOLA.com and not part of the articles, and even if they would have done that and found Perricone's articles amidst all the other ones, and even if they would have paid specific attention to Perricone's articles, they still would not have known that Perricone authored them. Why is that important? Because at that time, those postings by Perricone would have had no more effect than any of the other hundreds of user, of anonymous user comments that were posted under the articles and had their own statements. Certainly, as this Court found in McRae, dealing with the same prosecutor and the same type of comments, the small handful out of hundreds of anonymous speculative postings below the text of the article, other than in the article, made by a non-member of the prosecution team, and Sal Perricone did not prosecute Rene Gilpride, this Court couldn't say the Court abused discretion in not presuming prejudice or denying a new trial. And that's the same thing in this case, Your Honor. It's the same type of situations. The postings, the comments, the tone is bad, but they are still a handful out of hundreds. And as this Court found in its previous decision in affirming the Pratt case, most of the pretrial publicity online was about the Jeffersons, not about Pratt. Granted, there were some comments about Perricone about Pratt, no denying that. But when you look at them, just as this Court did in McRae, they do not rise to that level of where this Court should say that Judge LaMalle abused his discretion in declining to presume prejudice and not granting a new trial. Now, with the McRae case, Mr. Favre made a point that in McRae the Court did not analyze Brecht v. Abramson, footnote 9. Correct that this Court in McRae did not mention Brecht v. Abramson, but it's not correct to say this Court did not discuss a presumption of prejudice. In fact, this Court looked at that possibility and determined that McRae failed to persuade of actual or presumed prejudice. Instead, it determined McRae must prove a connection between the postings in question and the conduct of his trial such that we must question our confidence in the jury verdict. This is consistent with Rule 33 case law in this circuit, requiring that there be some connection shown to show a lack of confidence in the verdict. And you don't have that here because this case mirrors the facts of McRae very well. As far as the Burgess case, Mr. Favre brought that up, that that was a Brecht footnote 9. But Judge King, I think as you noted, Burgess itself was a habeas case, like footnote 9 in Brecht. And I think that does make a difference, that we have not seen this type of application of footnote 9 to a Rule 33 case, quite honestly, except in the Bowen opinion. And as Judge Prado pointed out in his very detailed dissent, the Bowen majority seems to put that panel at odds with binding Fifth Circuit opinion, and it makes the Fifth Circuit appear to have become the first court in the country to ever apply footnote 9 in that context. And there's no direction from the Supreme Court to say anything. And certainly, as Judge Prado pointed out, I don't think the intent of footnote 9 is to eviscerate Rule 33 case law. I think the intent of footnote 9 is to eviscerate this matter and require exactly what has been required all the time, on newly discovered evidence, the defendant to show a connection and show prejudice. We certainly outlined a number of cases in our brief, suggesting that this type of misconduct, certainly not to the level that Sal Perricone did, but other situations where prosecutors around the country have either tweeted information or put things on Facebook and those are in our brief. But in all of those cases, as we pointed out, they failed to presume prejudice and they engaged in a balancing test. In fact, several of the cases that Mr. Fowler cited in his brief, in a string site, we pointed those out, in all of those, there was a balancing act that took place. And as this court pointed out in McCrae, dealing with the case of U.S. v. Hensley, which ultimately did reverse because of comments, I'm sorry, in that situation, that these statements just didn't rise to the level of awarding a presumption and awarding a reversal. Nothing says you must presume prejudice. And indeed, there's other types of prosecutorial misconduct that quite honestly seem much more egregious than anonymous postings, including hiding evidence, withholding exculpatory evidence, commenting on a defendant's post-arrest silence in front of the jury, vouching for witnesses in front of the jury, knowing use of perjured testimony in front of jury, things that are meant to influence the jury right there and then. As bad as those things are, there's not a presumption of prejudice. In all of those cases, there is a balance. Is it material? Did it affect the verdict? Those are constitutional issues. It doesn't seem that this non-constitutional thing that happened outside of trial should have a lesser standard for defendants to show. This Court's Rule 33 precedent is clear, and it has been. McCrae's facts, reasonings, and holdings compel affirmance in this case. Without a connection between the postings and the conduct of the trial, the revelation that Perricone was the author of these postings does not call into question the integrity of the jury's verdict, which has already been affirmed by this Court once. To apply a presumption of prejudice solely because of the nature of the misconduct, because of the nature of Perricone's contemptible and condemnable conduct, it would allow what Poole forbids, the grant of a new trial as a mechanism to punish prosecutors. Perricone's conduct was egregious, it was unprofessional, and it was wrong. But it would be a separate wrong to start granting new trials based on errors and misconduct that do not relate to the verdict. Well, in the Bowen case, too, it wasn't simply what Perricone did. It was the perceived, on the part of the panel anyway and others, failure of the Department of Justice to, you know, do what they thought, what they considered to be an aggressive route out the problem, fall on your sword, admit error, and all that. I mean, I think there was, it wasn't simply what Perricone did. It was the response of the Justice Department. I mean, no question that was a major component of that decision. I agree from reading the decision. I agree that that seems to be part of it. Of course, the government, we still believe that was an incorrect application, even in that case. You haven't got, at least I don't think you have that here, so. No, there certainly is none of that there. And again, we do point out, obviously, we disagree with that decision. For the same reason we're saying here, because a focus on that doesn't focus on a basic Rule 33 issue, did that conduct affect the trial? And that's what all Rule 33 case law should be. And it's the simple thing that two wrongs don't make a right. Perricone being wrong and making the wrong decision to reverse a trial that's not tainted, doesn't make it right. And it only leads to what the Supreme Court said in Delaware versus Van Arsdale, that when you reverse for error that does not relate to the verdict, it encourages litigants to abuse the judicial system and it bestirs the public to ridicule it. The court and the public certainly have a right to be upset with Perricone's conduct, no doubt about that. And it should hold Perricone accountable. It should hold any prosecutor accountable for that a jury is found that's not tainted by that. Don't flip an untainted verdict to punish Sal Perricone, because that won't punish Sal Perricone. As the Seventh Circuit said in the Stanford case, the only thing that really does is punish society for the misdeeds of the prosecutor. It also, in this case, would ignore the work of the jury, in which there is no reason to believe they did anything but follow their instructions and decide the case and the evidence. And the only people that would end up punishing are the current diligent and ethical attorneys and staff of the United States Attorney's Office for the Eastern District of Louisiana, who were not involved in this matter and did not violate their ethical obligations. For all of these reasons, Judge LaMelle correctly did not presume prejudice and correctly denied a motion for new trial. And we respectfully ask this court to affirm. Thank you, Your Honor. Thank you, sir. Mr. Fowler. Speaking of Mr. Boydman's last comment, one of the things we don't know is the total innocence of the rest of the U.S. Attorney's Office. There is a great deal of evidence, and I don't have time to detail it, but it's in our brief, that they knew Mike Magnet testified in connection with Danziger Bridge that he had notified his superiors, Mr. Kennedy, Mr. Landrieu, and Mr. Cohn about his belief that Sal Perricone was blogging about the cases. In fact, a former assistant, Peter Straus, stationed in Pakistan, was emailing, and this is on the record, about what was going on in the U.S. Attorney's Office. And we'll never know. I'm not concerned at all with punishing Sal Perricone, though punished he should be. This is not a mechanism for that. They really, what they want you to do is void an application of Brecht in a new trial circumstances. Well, what he doesn't mention, he tells you, he, Mr. Boydman, about the five, the standard for new trial. When is a new trial permissible, required when there's newly discovered evidence? He didn't mention. It's called in the interest of justice. That's what Rule 33 says. The interest of justice, and it suggests, I suggest to you, that the Brecht doctrine of presumption, you first must decide that this is the unique case that Brecht refers to. If you tell me it's not, then I have nothing else to base my argument on. But what they went out and did is unquantifiable. All of the cases that Mr. Boydman refers to were trial error cases. As trial error cases, they are quantifiable. I defy this court to be able to quantify the damage done by Sal Perricone, and we don't even know who else, with respect to this activity. Of course, I think Judge Owen, who actually wrote the initial opinion, there was no Perricone issue in the case. We don't, her upholding of the voir dire in that case, which I'm not here to re-argue, was in the absence of our knowledge. I have a Perricone case, and I should have found it. I haven't. I'll go back and look. We've had this issue in front of— Not in this case. Not in this case, but not in Ms. Pratt's case, but in another conviction. The only case that I know of in which the issue came up before you is Broussard, that's it, which was never tried. The only cases that were tried are the three in question, and those are the only cases in which the voir dire becomes implicated in the case. How do you tell me what we know is this is ongoing, pervasive, racially motivated conduct, anonymously done, and they hide behind the fact that, oh, it was anonymous, who cares? Let me read to you, because I have only a minute or two, what was said by Judge Jones in the dance of the bridge, and see if it doesn't apply as well exactly to this case. Most pernicious, these attorneys' online comments knowingly contributed to the mob mentality potentially inherent in instantaneous, unbridled, passionate online discourse. These prosecutors, meaning Sal Perricone in man in that case, but here we're talking almost exclusively of Perricone, these prosecutors created an air of bullying against defendants whose rights they were sworn to protect. That is not an issue that Mr. Boitman deals with, because it's frightening. We're not asking for across the board grants of new trial. This is a unique Brett footnote case. It fits it, and they know it perfectly. Judge Jones concluded by saying, preventing mob justice is precisely the goal of prosecutorial ethical constraints. The government here should not be able to shelter under a banner of, quote, no prejudice proved, close quote, while the prosecutors acting no better than, indeed, try to inflame the public. And it's that inflame, that conflagration caused by Sal that is to be condemned, not to punish him, but to protect Rene Gill Pratt. Nobody here can tell me what impact that had on her trial. And what he's saying is the case is unique. There's the pattern. It's perfectly applicable as the Inda Danza case for presuming prejudice, and it's the duty, I suggest, of this court not to just protect verdicts, but protect defendants who stood there and were the subject of this kind of conduct by the Department of Justice. And because we're unable to demonstrate, per se, we should, without telling us we're not entitled to relief. I object to that. Thank you. Thank you, Mr. Fowler. The case is submitted. This panel will adjourn until 8.30 tomorrow morning.